OPINION
These consolidated cases arise from a decision of the Juvenile Branch of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting permanent custody of Gloria Jones's four minor children to Franklin County Children Services ("FCCS"). The factual circumstances resulting in the trial court's order terminating parental rights are detailed below in our discussion of Ms. Jones's argument urging reversal of the decision.
Procedurally, this case was initiated in 1998 via FCCS's filing complaints seeking determinations that the children had been abused, neglected and/or were dependent. In April 1998, all four children were placed in the temporary custody of FCCS. In May 1999, FCCS filed motions seeking permanent court commitment ("PCC") of the children in order to allow them to be placed for adoption.
As indicated above, the trial court ultimately granted FCCS's motions following a hearing conducted on September 26, 2000.
Gloria Jones (hereinafter "appellant") has timely appealed, assigning a single error for our consideration:
 The trial court erred in sustaining the FCCS motion for permanent custody commitment [sic] when FCCS did not make any significant or good faith effort to cause or permit reunification of the mother and her children.
Before reaching the merits of appellant's argument on appeal, we turn to the record to ascertain the relevant facts, virtually all of which are uncontested here.
The children involved are Kimberly Rudolph, born June 14, 1988; Jack Rudolph, born June 8, 1989; Heather Rudolph, born June 14, 1990; and, Raymond Jones, Jr., born February 17, 1995.[1] The record indicates that Raymond Jones, Sr., is the natural father of Raymond, Jr. Jack Rudolph is the natural father of the three older children. On the date of the PCC hearing, the children were aged 5, 10, 11, and 12 years, respectively.
FCCS caseworker Laura Cipolaro testified regarding her knowledge of the children and the agency's actions taken on their behalf. The children were removed from appellant's custody in October 1997, when the agency received a report of physical abuse regarding Jack, Jr. The child, seven-years-old at the time, was reportedly burned with a blow torch; while his stepfather, Ray Jones, blow-torched his hand, appellant assisted by holding the child's hand down.
Five exhibits were admitted in evidence at trial, four of which are particularly significant. FCCS's exhibit No. 1 is a copy of the 1997 indictment returned by a Franklin County grand jury charging both appellant and Raymond Jones, Sr., with one count each of felonious assault and child endangering, both second-degree felonies. The indictment stemmed from the blowtorching incident.
Included with exhibit No. 1 is documentation evidencing appellant's unsuccessful attempt to be found not guilty by reason of insanity; she ultimately pled guilty to one count of child endangering. Exhibit No. 2 is a copy of the sentencing court's April 14, 1998 entry journalizing the four-year prison term she received as a result of her plea.
Exhibit No. 4 is a document issued by the Ohio Department of Rehabilitation and Correction showing that appellant, as of the date of the hearing, was currently incarcerated at the Ohio Reformatory for Women.[2]
The caseworker testified regarding various neglect and physical and sexual abuse findings relating to the other three children, most of which were "substantiated." The various findings were substantiated against appellant, Jack Rudolph, a relative, and "mother's [appellant's] husband, Todd."
The record is replete with the children's allegations of abuse and neglect by appellant and Raymond Jones, Sr., including being beaten with belts and burned. The children also told FCCS personnel that some of them had smoked marijuana and drank wine with appellant and Jones.
Ms. Cipolaro explained the "MEFRAM" tool which FCCS uses to assess risk factors for placement purposes. The MEFRAM considers various factors, including the age of the children, the specific events the children have been exposed to, and the parent's mental health needs and/or drug or alcohol issues. The children here were assessed at risk level 5, the highest level of risk. The caseworker detailed appellant's failure to comply with critical requirements of the case plan for reunification. Prior to being imprisoned for child endangerment, appellant failed to undergo a psychological evaluation; failed to undergo alcohol and drug assessments; failed to submit to random drug screens; and, failed to participate in parenting classes and mental health counseling, with a focus on anger and domestic violence issues. Appellant also failed to visit the children when she was granted limited visitation. Eventually, the visitation was officially suspended, pending resolution of the felony charge.
As of February 1998, the children have been in the continuous care of one couple, Joanne and Ed Gobel. Ms. Gobel testified regarding the home she and her husband have made with the children, who have referred them as "Mom and Dad" since "day one." According to Ms. Gobel, she shares a "very loving relationship" with the children, all of whom appear to be happy in their home. She testified that she and her husband want to adopt the children.
According to the caseworker's observations of the children in the Gobel home, all four of them have formed a particularly "bonded attachment relationship" with the foster mother, which relationship they do not have with appellant. In fact, the children have voiced their fear of appellant to the caseworker. The children have also bonded with Mr. Gobel and want to remain in the care of their foster parents.
All of the children are considered "special needs" children; to varying degrees, they suffer from various emotional, psychological, and developmental problems. While in the custody of their foster parents, the children have made progress through counseling and special education classes. The youngest child, the victim of the blowtorching, suffers from post-traumatic stress disorder.
On cross-examination, the caseworker acknowledged that some of the requirements of the case plan became unavailable to appellant when she went to prison.
Appellant testified regarding her desire to reunify with her children. She denied doing what she pled guilty to; she testified that she had her hand on the child's hand to pull it away from the blowtorch held by his stepfather. She claimed that there was nothing she could do to prevent it.
The trial court ultimately concurred with both FCCS and the guardian ad litem, concluding that FCCS had not only proven by clear and convincing evidence that PCC would be in the best interests of the children; the court went on to say that it was proven by the more burdensome "beyond a reasonable doubt" standard.
Turning now to appellant's assignment of error, appellant raises a very narrow issue on appeal. She essentially contends that the trial court erred in granting PCC because the court did not make a specific adjudication as to whether FCCS demonstrated a "good faith effort to cause or permit reunification" between her and the children.
Appellant's argument incorporates two additional issues, although she does not assign them as separate and distinct errors. She submits that FCCS's case plan was legally insufficient. She also suggests that the record does not contain sufficient facts to support termination of her parental rights.
As indicated above, appellant first argues that R.C. 2151.414 requires proof of "good faith efforts" toward reunification as a precondition to granting PCC. Former R.C. 2151.414[3] initially requires proof, by clear and convincing evidence, that a child falls into one of four categories, and that PCC is in the child's best interests. The category into which these children fall, R.C. 2151.414(B)(2), provides that PCC shall be granted if the court determines that a child "cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent" and determines that "permanent custody is in the child's best interest."
Appellant prudently does not challenge the first prong of the analysis; since she is incarcerated, Raymond Jones is incarcerated, and Mr. Rudolph has now disavowed interest, the children clearly cannot be placed with her or either of the natural fathers. In determining whether the children "should not" be placed with a parent, R.C. 2151.414(E) requires a determination that, as applicable here, one or more of the following factors exist:
 (5) The parent is incarcerated for an offense committed against the child or a sibling of the child;
 (6) The parent has been convicted of or pleaded guilty to * * * Section 2919.22 [child endangering] * * * and the child or a sibling of the child was a victim of the offense * * * and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child.
* * *
 (12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.
* * *
 (15) The parent has committed abuse * * * against the child or caused or allowed the child to suffer neglect * * * and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.
Application of these factors clearly compels a finding that the children should not be placed with appellant.
The Franklin County Public Defender was appointed guardian ad litem of the children. Throughout these lengthy proceedings, including this appeal, the guardian has concurred with FCCS, unequivocally agreeing that termination of parental rights and granting PCC would serve the best interests of the children. FCCS and the guardian contend that there is no merit to appellant's position because R.C. 2151.414 does not contain any language explicitly requiring any "good faith effort." They acknowledge, however, that such efforts may have some relevance in determining whether PCC is appropriate in some cases.
For the reasons which follow, we agree with FCCS and the guardian ad litem on each of the issues delineated above.
A plain reading of R.C. 2151.414 reveals no language explicitly requiring a trial court to make a finding that an agency such as FCCS demonstrate a "good faith effort" toward reunification. We agree with appellees, however, that notwithstanding the absence of such express language, FCCS's efforts to reunify the family can be a relevant factor to be considered in determining whether PCC is appropriate in some cases.
Appellant does not address one extremely crucial point; under circumstances such as those presented here, the trial court could have reasonably concluded that reunification would not be in the children's best interests regardless of the agency's efforts or lack thereof. Given the facts of this case, after appellant pled guilty and was sentenced to prison for four years, continued efforts aimed at reunification could have been deemed futile.
Again, the trial court could have relied solely upon any one of the R.C. 2151.414(E) factors set forth above, some of which are duplicative, in determining that the children should not be placed with appellant.
Each case cited by appellant is distinguishable from the instant case. For example, In re Smart (1984), 21 Ohio App.3d 31, involved proceedings brought pursuant to R.C. 2151.353, not the statute applied here. Of greater significance, however, the child at issue was alleged to be dependent, not an abused child whose parent had been accused of abuse, much less a parent who had pled guilty to and was imprisoned for committing a violent felony against the child.
We summarily reject appellant's contentions regarding both the sufficiency of the case plan and the sufficiency of the evidence presented at trial.
Appellant has not demonstrated that the case plan was deficient. However, even if we found FCCS's case planning to be lacking in some respect, we note that FCCS is granted some degree of statutory latitude with respect to carrying out its case planning. Pursuant to R.C.2151.414(C), the trial court is expressly directed to "not deny an agency's motion for [PCC] solely because the agency failed to implement any particular aspect of the child's case plan." (Emphasis added.) In addition, as discussed infra, we find that the trial court could have reasonably concluded that reunification would not be in the children's best interests regardless of the agency's case plan or other efforts.
Finally, there is no merit to appellant's argument that the evidence presented at trial failed to establish a sufficient factual basis upon which to grant PCC. As detailed above, the record overwhelmingly establishes an adequate factual basis for terminating appellant's parental rights.
Based upon the record before us, we cannot say that the trial court erred in granting the agency's PCC motion and terminating appellant's parental rights.
The assignment of error is overruled. Having overruled the assignment of error, the judgment of the trial court is affirmed.
 ____________________ TYACK, J.
PETREE and DESHLER, JJ., concur.
[1] The stated dates of birth vary between exhibits, testimony and appellate briefs. We rely upon the dates as given in portions of the record via the testimony of the FCCS caseworker, to which no objection was lodged.
[2] Exhibit No. 3 is a similar document evidencing Raymond Jones's status as currently incarcerated, serving a four-year prison term for felonious assault, to which he pled guilty as a result of the same indictment.
[3] The guardian and counsel for FCCS addresses the applicability of former R.C. 2151.414. This section has been amended on numerous occasions. Since FCCS's motions were filed on May 7, 1999, they apply as controlling that version effective on March 18, 1999. Appellant does not challenge this assertion. We agree with both appellees' conclusion that, regardless of which version is applied to these facts, the outcome here would be the same.